## McHose v. Dutton.

1. **Assignment:** EQUITABLE: CONSTRUCTION OF INSTRUMENT. A written instrument construed and held not to operate as an equitable assignment of a fund for the benefit of creditors.

*Appeal from Story District Court.*

THURSDAY, APRIL 21.

IT appears from the averments of the petition that one Randall contracted to furnish the materials and erect a court house for Story county. The plaintiff entered into a written

contract with Randall to furnish the brick for said building, and after furnishing the same there was a balance due to the plaintiff amounting to $350. Plaintiff commenced an action against Randall, and on the 3d of April, 1877, he recovered judgment for the amount due. Execution was issued on said judgment, but nothing was made, said Randall being insolvent. On the 5th day of October, 1876, Randall executed a written instrument of which the following is a copy.

"OMAHA, Neb., Oct. 5th, 1876.

*"To the County Auditor, Treas., Members Bd.:*

"Pay to O. B. Dutton, Esq., all estimates which hereafter may be allowed me on my contract for erection of Story county court house, and I do hereby authorize said O. B. Dutton to receipt for any moneys due me on said contract. And I do also hereby authorize and instruct said O. B. Dutton to pay any claims which are now or may hereafter become due and payable on account of labor done or material furnished in the erection of said court house at Nevada, Iowa, and whatever amount may remain at the completion and acceptance of said court house, said amount to be placed to the credit of the undersigned.

"Signed, J. B. RANDALL."

It is further averred in the petition that under said written authority to receive estimates the said defendant received the sum of $18,000 from Story county, which sum the defendant still has, and that he refuses to pay the plaintiff the amount due him for the brick so furnished, although requested so to do.

Judgment is demanded against the defendant for the amount. The petition is entitled in equity, and there is a prayer for general relief. In an amendment to the petition, made after a demurrer thereto had been sustained, it is alleged that the plaintiff had no knowledge of the existence of said written instrument until after he had obtained judgment against Randall, and that the said sum of $18,000 was and is more than sufficient to pay all the creditors who were intended to be paid by said written instrument.

The defendant renewed his demurrer to the petition as amended. The demurrer was sustained. The plaintiff excepted and appeals.

*J. B. McHose*, *J. L. Dana*, and *John H. Drabelle*, for appellant.

*Henderson & Carney* and *J. S. Frazier*, for appellee.

ROTHROCK, J.—I.  If the averments of the plaintiff's petition to the effect that the defendant at the commencement

1. ASSIGN-  of the suit had $18,000 of the court house fund
MENT : equit-  in his hands are true, it is difficult to understand
able : con-
struction of  why he did not garnish the defendant when he
instrument.
issued execution on the judgment against Randall.

The question to be determined here, and upon which plaintiff's right to maintain an action depends, is, did the written instrument executed by Randall operate as an assignment to Dutton of the amount of money due on the contract, for the benefit of all who might have claims for labor and material furnished in the erection of the court house? If it was such an assignment, and Dutton accepted it, he was bound to discharge the trust thus reposed in him, and use the funds in his hands in payment of the beneficiaries.   It is well settled that a third party may maintain an action on a promise made to another for his benefit.   Counsel for appellant have cited a large number of authorities in support of this proposition. This court has repeatedly so held.   See *Thompson v. Bertram*, 14 Iowa, 476; *Hull & Co. v. Alexander*, 26 Id., 569; *Johnson v. Knapp*, 36 Id, 616, and other cases.   In section 1041 of Story's Eq., the rule is well stated in a quotation in this language: "If a man gives goods or chattels to another to deliver them to a stranger, chancery will oblige him to do it."

But the question presented in this case is, did Randall by this instrument unconditionally assign over this fund to Dutton to be paid in discharge of all claims for labor and materials arising from the construction of the building?   Or in

other words did Dutton, by accepting the order for the funds and drawing the money, bind himself to pay the laborers and material men? We think he did not. It appears from the petition that Dutton is a banker. The order given to him upon the county was no more than authority to him to receive the money and hold it for Randall. It authorizes and instructs Dutton to pay any claims for labor due or material furnished, and directs him to pay the balance to Randall or place it to his credit. This is no more than providing that Dutton was to be the agent of Randall and should disburse the fund to any (not all) of the laborers and material men. It was a private arrangement between the principal and his agent that the agent should receive and hold the money, and pay any claims for labor and materials and account for the balance to his principal. It was not an undertaking upon the part of Dutton that he would become liable to Randall's creditors, and Randall was not, as between him and Dutton, discharged from the payment of any of his debts. Plaintiff did not release Randall. On the contrary about the time or after Dutton received the money plaintiff commenced an action against Randall and obtained judgment. It is true he alleges that he was ignorant of the existence of the written instrument. In Story's Eq., Vol. 2, Sec. 1045, it is said: "In regard to the other classes of cases above suggested, namely, those where the question may arise of an absolute appropriation of the proceeds of an assignment or remittance, directed to be paid to particular creditors, courts of equity, like courts of law, will not deem the appropriations to the creditors absolute until the creditors have notice thereof, and have assented thereto; for, until that time, the mandate or direction may be revoked or withdrawn, and any other appropriation made by the consignor or remittor of the proceeds."

It was in the power of Randall at any time before the rights of the creditors attached to revoke the order to Dutton. Whether he did so or not does not appear. The fact as alleged in the petition, if it be a fact, that Dutton still holds

the funds, is not inconsistent with a revocation of his authority to pay the creditors. We think the demurrer to the petition was properly sustained.        AFFIRMED.