## POPE and another *v.* PORTER.

*(Circuit Court, S. D. Iowa, C. D.   December 12, 1887.)*

1. **CONTRACTS—TO PAY ANOTHER'S DEBT—ACTION BY BENEFICIARY.**
   C. bound himself personally by a note and mortgage on personal property, but in executing the same designated himself as "Agent." He afterwards sold the mortgaged property to the defendant, who, agreeing to pay the mortgage debt as a part of the purchase price, sold the property, but refused to pay the plaintiffs, who were the mortgagees, the amount of the mortgage debt. *Held,* even though C.'s wife was the real owner of the business, C. having bound himself personally, plaintiffs could maintain an action at law against defendant on his contract with C. to pay the mortgage.

2. **SAME.**
   Defendant bought personal property subject to a mortgage, which he agreed to pay as a part of the purchase price. Plaintiffs, who were the mortgagees, brought an action to recover on defendant's agreement with the mortgagor to pay the mortgage debt. *Held,* that defendant was estopped from setting up as a defense an informality in the execution of the mortgage.

At Law.

The plaintiffs, Pope & Davis, were the mortgagees of 5,000 bushels of corn. The mortgagor sold the same to the defendant, James Porter, who agreed to pay the mortgage debt as a part of the purchase price. Defendant sold the corn, and, refusing to pay plaintiffs the amount of the mortgage, they brought this action to recover under the agreement between the defendant and the mortgagees. Defendant demurred.

*Cummins & Wright,* for plaintiffs.

*E. J. Goode,* for defendant.

SHIRAS, J.   On the twenty-fourth day of February, 1881, one D. A. Cheney, a resident of Polk county, Iowa, executed a chattel mortgage on

5,000 bushels of corn, stored in certain cribs, for the purpose of securing the payment of a note for $1,000, due to Pope & Davis, of Chicago, Illinois. On the twenty-ninth of October, 1881, Cheney sold the corn to the defendant, and executed a bill of sale thereof, in which it is provided that said corn "is subject to a mortgage to Pope & Davis, of Chicago, Illinois, for $1,000, which mortgage said Porter hereby assumes and agrees to pay off and cancel." The defendant took possession of the corn, sold the same, realizing some $2,000 therefrom, but has wholly failed to pay off the mortgage or any part thereof, and the plaintiffs now seek to recover judgment against him for the amount due them on the mortgage debt.

In executing the note and mortgage, D. A. Cheney attached to his name the word "agent;" but the papers do not disclose the name of a principal, and the mortgage is so drawn as to be the act and deed of D. A. Cheney, notwithstanding the use of the word "agent." On argument of the demurrer, it was stated by counsel that D. A. Cheney was doing business in the name of his wife, and hence counsel for defendant, assuming that the debt due plaintiffs was that of the wife, and not of the husband, seeks to make the point that no recovery can be had at law upon defendant's undertaking, because the debt due plaintiffs was not the debt of the mortgagor, D. A. Cheney; and in support of this proposition counsel cites Jones, Mortg. §§ 755, 760, in which it is said:

"To support an action upon this ground, therefore, it is necessary, in the first place, that the grantor in whose favor the stipulation is made should himself be personally liable for the debt assumed by the grantee; and, in the second place, that there be a debt or some obligation on the part of the person assuming the payment of the mortgage to support his undertaking. If the grantor be not the mortgagor himself, *or one who has bound himself personally for the payment of the mortgage debt*, the grantee in assuming the payment of the mortgage does not become personally liable through the grantor to the holder of the mortgage to pay the debt to him. There is in such case no chance for any equitable subrogation, and the agreement is considered as a mere declaration that the property was conveyed to the purchaser, subject to the lien of the mortgage."

As already stated, the note and mortgage signed by D. A. Cheney, agent, are so drawn as to bind him personally, and the fact that he was doing business in his wife's name would not in any way tend to relieve him from such liability. Even if the wife was the real owner of the business, still, in the execution of the note and mortgage to plaintiffs, D. A. Cheney bound himself personally for the payment of the debt, and therefore, when the defendant, in consideration of the sale and delivery of the corn to him, contracted with D. A. Cheney to pay the debt due plaintiffs as part of the purchase price of said corn, the plaintiffs can sue on such contract according to the very authority relied on by counsel for defendant. Furthermore, the rule given in the authority cited is the one applicable to mortgages on realty, in which the question is whether the purchaser of the real estate has bound himself to pay the mortgage debt in any event, or has only bought the realty subject to the mortgage. In the case at bar the mortgage was on personal property

which the defendant bought subject to the mortgage, further agreeing to pay the mortgage debt as part of the purchase price. By reason of this agreement, he obtained possession of the corn, sold it, and now holds the proceeds thereof. Under such circumstances he is liable for money had and received for the use and benefit of plaintiffs, as well as upon the express promise to pay the debt as part of the purchase price.

It is also urged that an action at law cannot be maintained, for want of privity between plaintiffs and defendant. It has long been the settled law in Iowa that an action at law can be maintained upon a promise made by A. to B. to pay a debt due from B. to C., provided a sufficient consideration is shown to exist. *Johnson* v. *Collins,* 14 Iowa, 64; *Thompson* v. *Bertram,* Id. 477; *Scott* v. *Gill,* 19 Iowa, 187; *Johnson* v. *Knapp,* 36 Iowa, 616; *Phillips* v. *Van Schaick,* 37 Iowa, 229.

Counsel for defendant cites the cases of *Bank* v. *Grand Lodge,* 98 U. S. 123, and *Cragin* v. *Lovell,* 109 U. S. 194, 3 Sup. Ct. Rep. 132, as holding the doctrine that, under the facts of the present case, there is such a want of privity between the parties that the action cannot be maintained. In the latter case it appeared that Eliza A. Quitman had sold a plantation to one Fisk, who executed nine notes and a mortgage on the plantation to secure the purchase price. Subsequently George D. Cragin, by judicial proceedings, established the fact that, in making this purchase, Fisk was his agent, and wrongfully took the title in his own name. The vendor brought suit for foreclosure of the mortgage, and, under the decree therein, sold the plantation, but did not realize enough to pay the amount of the notes given by Fisk. Thereupon she brought an action at law against Cragin, setting up the giving of the notes, and averring that, in the proceedings between Cragin and Fisk, the former had averred that he was liable for and ready to pay for said property. The supreme court held that, if the action was based upon the notes, it could not be maintained, because Fisk alone was the maker thereof, and that, if the action was founded on an agreement by Cragin to pay them, it could not be maintained, because there was no privity between plaintiff and Cragin, for the reason that the averments by Cragin in the proceedings against Fisk, that he was liable for and ready to pay for the lands, if "a promise to any one, it was not a promise to the plaintiff, nor even a promise to Fisk, to pay to the plaintiff the amount of the notes; but it was at the utmost a promise to Fisk to pay that amount to him, or to indemnify him in case he should have to pay it." In other words, the court holds that the facts of the case fail to show an agreement between Cragin and Fisk that the former should pay to the mortgagee the debt due her. Herein lies the difference in the facts of that case and the one at bar, which renders the ruling in that case inapplicable to the one under consideration.

In the other case cited it was held that the promise made by defendant was concurrent with and dependent upon the contract of the other party, and, being an executory contract between the immediate parties thereto, a third party could not sue thereon, without, in effect, changing the meaning of the contract. In the discussion of the case it is said

that, "where a debt already exists from one person to another, a promise by a third person to pay such debt being primarily for the benefit of the original debtor, and to relieve him from liability to pay it, (there being no novation,) he has a right of action against the promisor for his own indemnity; and if the original creditor can also sue, the promisor would be liable to two separate actions, and therefore the rule is that the original creditor cannot sue." The cases in which this rule is applied are those in which the right of action is based solely upon the naked promise to pay; it being held that the maker thereof should not be held liable to two actions on an agreement made solely with one. The doctrine applicable to the present case is found fully stated in the same opinion in the following terms:·

"We do not propose to enter at large upon a consideration of the inquiry how far privity of contract between a plaintiff and defendant is necessary to the maintenance of an action of *assumpsit.* The subject has been much debated, and the decisions are not all reconcilable. No doubt the general rule is that such a privity must exist. But there are confessedly many exceptions to it. One of them, and by far the most frequent one, is the case where, under a contract between two persons, assets have come to the promisor's hands or under his control, which in equity belong to a third party. In such a case it is held that the third person may sue in his own name. But then the suit is founded rather on the implied undertaking the law raises from the possession of the assets than on the express promise."

In the case on trial, the mortgaged corn·belonged in equity to the plaintiffs; that is to say, they were entitled, by virtue of their mortgage, to take possession thereof, to sell the same, and apply the proceeeds to the payment of the debt due them. The defendant came into possession of these assets solely through the contract he made with Cheney, whereby he assumed and promised to pay the debt due plaintiffs as part of the purchase price of the corn, and as, by means of this possession thus obtained, he has been enabled to sell the corn, and now holds the proceeds, he is liable to suit on part of plaintiffs.

The further point is made that the mortgage was not so executed as to bind Mrs. Cheney, and that, consequently, the defendant is relieved from liability. The debt which the mortgage was given to secure was her debt, and the corn belonged to her. The defendant got possession of the corn by agreeing to pay the mortgage debt as a part of the purchase price, and he bought subject to the mortgage. He cannot now be heard to urge informalities in the execution of the mortgage as a reason why he should not perform his agreement to pay the amount actually due on the mortgage. The real question is not as to the validity of the mortgage, but whether the defendant should be held to the performance of his agreement to pay the debt due plaintiffs. The demurrer is overruled.